David L. Malbin, J.
The above-named defendants were indicted on January 24,1963 by the Grand Jury of Kings County, charged with the crime of murder in the first degree. It was alleged that on the night of December 20, 1962, in the East New York area of Brooklyn, tbe deceased was attacked, robbed and stabbed; that as a result of the wounds inflicted upon him lie died within an hour (hereafter. On September 18, 1963, after a trial before court and jury, separate verdicts of guilty were rendered against the three defendants. Before sentence a motion was made to set aside the verdict upon the various grounds set forth in section 165 of the Code of Criminal Procedure and further that the defendant Burwell’s rights and privileges under both Federal and State Constitutions were *270 violated. In addition thereto, it was contended that the defendant Burwell’s counsel was denied the right of access to his client. During the time that the accused was in custodial interrogation, a confession was taken from him after his attorney had requested and been refused an opportunity to see him. This motion was denied on January 8,1964 in a memorandum decision by the trial court. Thereafter on January 10, 1964 sentence was imposed and the three defendants were committed to the Elmira Reception Center; Burwell, for a term of 5 to 10 years; McMoore, for a term of 10 to 20 years; Washington, for a term of 714 to 15 years. An appeal was taken by the defendants from the separate judgments to the Appellate Division, Second Department. The appellate court ordered the action to he remitted to the trial court for further proceedings in accordance with People v. Huntley (15 N Y 2d 72). It was further indicated that the procedure described in People v. Korda (24 A D 2d 577) should be followed. In addition thereto, it was directed that the court shall consider and make findings on the issue as to whether the defendant Burwell’s counsel was denied access to him during his interrogation by the authorities. The appellate court further directed that in view of the fact that the defendants ’ convictions were based, in part, upon the alleged confessions and statements, the issue as to the voluntariness of said statements was to be independently determined by the trial court without a jury; and that the issue as to whether the defendant Burwell’s counsel was denied access to him while he was being interrogated by the police and the prosecutor should be determined. The precise question as to when Burwell’s attorney first came to the police station, when he first demanded an opportunity to speak to the defendant Burwell, and when the attorney first spoke to the Assistant District Attorney who was conducting an investigation and first conferred with Burwell, and when permission was given by the prosecutor to the police to permit counsel to speak to the accused. The Appellate Division (25 A D 2d 663, 664) as a guide to the trial court stated as follows: “In our opinion, whether Burwell’s counsel was denied access to him is a factor to be considered on the issue of voluntariness of the inculpatory statements obtained from Burwell (People v. Black, 25 A D 2d 663). Nothing contained herein shall be deemed a modification of the existing rule that in this State no duty devolves upon the police or prosecutor, incident to the interrogation of any accused person after arrest and prior to arraignment, to advise him of his right to remain silent and to obtain counsel (People v. Acciarello, 23 A D 2d 777 [2d Dept.]).” If the bare interrogation of Burwell was completed before counsel appeared, the rule in *271 People v. Donovan (13 N Y 2d 148) and like cases will not apply (People v. Livingston, 22 A D 2d 650).
The case at bar was tried in 1963 prior to the pronouncement of the United States Supreme Court in the case of Jackson v. Denno (378 U. S. 368) decided in June, 1964. It was in that landmark decision which held that a confession admitted in evidence against the accused violated the constitutional guarantee of due process of law and mandated that the defendant was entitled to an adequate, reliable and independent hearing on the issue of voluntariness, and that the confession must be established to be a voluntary one beyond a reasonable doubt before it can be submitted to the jury for their determination. The New York State Court of Appeals in People v. Huntley (15 N Y 2d 72) in following tlic Jackson decision of the United States Supreme (Am t, then adopted a set of rales; requiring a separate hearing by the Trial Judge on the issue of the voluntariness of the confession.
The Court of Appeals subsequent to the jury verdict in the case now before this court in its extended treatment of the question of confessions decided in People v. Donovan (13 N Y 2d 148) that a confession taken by police after refusal to allow an attorney to see or speak with him would invalidate the confession. Judge Fuld, in writing for the majority, stated in People v. Donovan (supra, p, 152): “It would be highly incongruous if our system of justice permitted the district attorney, the lawyer representing the State, to exact a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police.”
There is no long’er room for argument. It is quite obvious that the right to counsel and its necessity, extends not only to the trial but to the pretrial proceedings as well (People v. Waterman, 9 N Y 2d 561; People v. Meyer, 11 N Y 2d 162; People v. Rodrigues, 11 N Y 2d 279, 284-285; Escobedo v. Illinois, 378 U. S. 478).
It 'was further stated in People v. Donovan (supra, p. 151) : ‘ ‘ It needs no extensive discussion to establish the high place which the privilege against self-incrimination enjoys in our free society.” The court there held in a 4 to 3 decision that if a request of counsel to see the accused is denied to him and a confession is obtained, it violates the rights of the defendant and it is inadmissible. It is interesting to note in one of the dissenting opinions in the Donovan case (supra), Judge Foster observed that the proof contained in that record did not dispute the voluntariness of the confession; it raised facts of illegal restraint and interrogation. How prophetic were the words then *272 written by him published in his dissenting opinion on October 8, 1963 wherein he stated (p. 162): “ that a suspect may not be interrogated by the police without counsel present to advise him to keep silent * * *. This may lead, and it seems to me inevitably so, in all fairness, to the requirement of assigned counsel. Perhaps all confessions in criminal cases are suspect, perhaps their use should be prohibited — but such is not presently the law. ’ ’ The change in requirements during the interrogation of an accused in custody came swiftly. (See Miranda v. Arizona, 384 U. S. 436, and Johnson v. New Jersey, 384 U. S. 719.)
If the Donovan ease applies in the case at bar, the confession should be excluded and further discussion and a Huntley hearing would be unnecessary. However, the proof as to the denial of access raises a sharp issue of fact which will be treated later on in this opinion.
The trial court conducted an independent healing on all the questions remitted by the Appellate Division of the Second Department. On the issue of voluntariness of the confessions and statements that were received in evidence on the trial, the People offered the entire trial record and the exhibits which constitute a part of the minutes of the so-called ‘ ‘ Huntley hearing ”. Testimony disclosed that the defendants were arrested in the early hours of December 27,1962 and brought to the police station and questioned about an unrelated assault stabbing that was alleged to have been committed one-half hour after midnight. Defendant Burwell was questioned by Detective Ridings on December 27, 1962 between 9:30 a.m. and 10:30 a.m. in the 75th Precinct. The statement was signed by the defendant Burwell and "was subsequently received in evidence as People’s Exhibit 33. The defendant Burwell was again questioned in the police station by an Assistant District Attorney on December 27, 1962 between the hours of 11:18 a.m. and 12:10 p.m. A typewritten copy of the interrogation was received in evidence as People’s Exhibit 35. The defendant McMoore was questioned by Detective Wright at the police station on December 27, 1962 from 10:00 a.m. to 10:45 a.m., and this statement was received in evidence as People’s Exhibit 34. Defendant McMoore was again questioned at the police station by an Assistant District Attorney on the same day between the hours of 12:40 p.m. and 1:00 p.m. The questions and answers taken during the interrogation were transcribed and a written copy was received in evidence as People’s Exhibit 36.
The defendant Washington was questioned by the Assistant District Attorney at the police station on December 27, 1962 *273 commencing at 1:25 p.m. Time was taken ont because the defendant desired to eat; the interrogation started at 1:50 p.m. and was concluded at 2:00 p.m. This transcribed written statement was received in evidence as People’s Exhibit 37. There was another statement taken by the Assistant District Attorney, referred to as People’s Exhibit 39 for identification, and this interrogation dealt with an unrelated crime and was excluded by the court.
The People contend that the statements were freely and voluntarily made by the defendants. The fact is undisputed that neither the police nor the prosecutor advised the defendants of their right to the aid of counsel and to remain silent; nor van-; there a compliance with the recent requirement that there must be no questioning of an accused until he is made aware that he is entitled to the presence of appointed or retained counsel during the interrogation.
The defense requested a voir dire that was held during the trial, on the issue of the voluntariness of the confession before it was received in evidence. The defendants Washington and McMoore testified that they were threatened, assaulted and received severe punishment at the hands of the police officers; that the defendant McMoore said he was kicked by a detective and that he was knocked over a cabinet in one of the rooms: one of the defendants testified that he had a wooden stick broken over his back, and that the alleged incriminatory statements imputed to them were suggested by the police and that they were made because of the fear that they would be subjected to additional beatings. The defendant Burwell who did not testify at the trial, was a witness at the independent TIuntley hearing and he stated that he was kicked, beaten and struck by the police and that he received a swollen right hand. In short, the defendants’ claim was that the statements and confessions were the product of coerced actions by the police. (Malinski v. New York, 324 U. S. 401; Stroble v. California, 343 U. S. 181; Payne v. Arkansas, 356 U. S. 560; Townsend v. Sain, 372 U. S. 293, 307.)
The defense also called a young attorney as a witness who testified at both the trial and the hearing. He stated lhat he was admitted as a member of the Bar about a year before the alleged (-vent; that he was employed by a firm of aHornevs maintaining an office in the upper part of Fulton Street in Brooklyn, New York; that he appeared at the police station at the request of the defendant Burwell’s mother; that he was denied immediate access to his client (which episode will be treated at another point of this opinion); that he spoke to the defendant Burwell who told him he was beaten by the police and that he had been *274 beaten on the back and arm with a wooden stick which had been broken; that the attorney noticed a swelling on the back of his left hand.
The People in rebuttal offered evidence in which each police witness categorically denied striking, beating or kicking or threatening any of the defendants or suggesting the statements given by them, and also offered evidence that none of the defendants at any time had complained of any alleged beating to the Assistant District Attorney; nor was any complaint made by the defendants or any attorney at the time that they were arraigned in the Criminal Court on December 27, 1962. The prosecution also offered proof of the medical report records of these defendants when they were remanded to detention and examined tile same day as well as a photograph of the defendant Washington which showed no bruises or lacerations. Every police officer who was identified as being present at the police station from the period of the defendants’ arrival in the police station until they were taken to the Criminal Court for arraignment in the late afternoon of the same day, gave testimony that they at no time struck, threatened or assaulted any of the defendants. The Assistant District Attorney who was present in the police station during the interrogation conducted by him of the defendants testified that he had noticed a swelling on the right hand of the defendant Burwell and made inquiry concerning it; that the said defendant Burwell stated to him that he received the injury the night before he was arrested. This was the charge upon which he was brought into the police station in the early morning of December 27, 1962.
It would tax human credulity to accept as credible the evidence offered by the defense. Apparently, the story was fabricated and concocted to present a triable issue on the question of voluntariness of the confession. The independent witness, that is, the attorney who testified that he was told by Burwell that he was struck by the police, lends no support to his claim. This proof merely confirms that the defendant Burwell told the lawyer witness that he had been beaten. Even as to the actual observations testified to by this witness, it is contradicted by the defendant himself. The attorney evidently was in error when he stated that he saw the defendant’s left hand and "its condition indicated a swelling on the back of the said left hand. This statement is not only contradicted by the defendant himself who stated that it was his right hand that was struck and swollen, but also by the Assistant District Attorney and the police officer who testified that it was the right hand that was swollen and *275 was the result, not of a police beating, but was received in a fight the night before.
The court finds:
(1) That the defendant Burwell made the statement attributed to him to Detective Ridings on December 27, 1962 at the police station between the hours of 9:20 a.m. and 10:30 a.m. ; that it was voluntarily made of his own free will and signed by the defendant in person.
(2) That the answers given to the Assistant District Attorney at the 75th Precinct during his interrogation of the defendant Burwell on December 27, 1962 between the hours of 11:18 a.m. and 12:10 p.m. were voluntarily and freely made by the defendant Burwell.
(3) That the statement made by the defendant McMoore to Detective Wright at the 75th Precinct on December 27, 1962 between the hours of 10 :Q0 a.m. and 10:45 a.m. was voluntarily given and made of his own free will.
(4) That the answers given to the Assistant District Attorney at the 75th Precinct during the interrogation of the defendant McMoore on December 27, 1962 between the hours of 12:40 p.m. and 1:00 p.m. were voluntarily given and made of his own free will.
(5) That the answers given to the Assistant District Attorney at the 75th Precinct on December 27, 1962 between the hours of 1:25 p.m. and 2:00 p.m. during the interrogation of the defendant Washington were voluntarily given and of his own free will.
The court rejects the defense contentions that the alleged statements and confessions were procured from the defendants as a result of coercive and assaultive methods. The proof offered by the defense failed to support that the defendants or any of them were threatened, kicked or beaten at any time while in custodial interrogation, nor that any psychological processes were practiced to induce said confessions. The court finds that the alleged injury to the defendant Burwell’s right hand was not inflicted during the police interrogation but, on the contrary, was received by Burwell during the time he was engaged in an assault upon another person prior to his arrival at the police station. It must be borne in mind that the arrest of these defendants was made as a result of an alleged assault after midnight of December 26, 1962 at about 12:30 a.m. in the early hours of December 27,1962.
The testimony offered by the defense was unreliable and untrustworthy. On the other hand, the proof offered by the People in support of the voluntariness of the confession was creditable and believable.
*276 The court finds that none of the defendants was advised of his constitutional rights to the aid of counsel or to remain silent or to refuse to answer (U. S. Const., 5th and 6th Amdts., N. Y. Const., article I., § 6; People v. Dorado, 62 Cal. 2d 338).
The court finds that the defendants were not advised as required that an accused has a right to remain silent, that any statement made can be used against him, and that he is entitled to the presence of appointed or retained counsel during interrogation (see Miranda v. Arizona, supra and Johnson v. State of New Jersey, supra).
The issues here presented may be narrowed to the following-questions :
(1) Was defendant Burwell’s attorney denied access to the accused?
(2) Were the alleged statements and confessions imputed to the defendants voluntary or involuntary?
(3) Was the failure to advise each defendant of his right to the aid of counsel and his privilege against self incrimination an infringement of his constitutional rights ?
(4) Was the failure to warn the defendants of the recent requirement to be made aware of the constitutional and statutory rights in addition to the right to have an appointed or retained lawyer present during the period of custodial interrogation a denial of due process ?
Disposing- of the questions in reverse order, we shall discuss the failure to comply with the case of Miranda v. Arizona, (384 U. S. 436, supra) in its application to the case at bar. This contention has no valid basis and the court rejects the request to declare the statements and confessions inadmissible. Mr. Chief Justice Wakreh, writing for the majority in Johnson v. New Jersey (supra, p. 721), in referring to Miranda, stated: “We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago.” The above quote would indicate that the requirement concerning interrogation of the accused in custody is applicable to those eases in which trial begins after June 13, 1966 and should not be applied retroactively. The opinion in Johnson v. New Jersey (supra, p. 732, 733) also states: “On the other hand, apart from the application of the holdings in Escobedo and Miranda to the parties before the Court in those cases, the possibility of applying the decisions only prospectively is yet an open issue »::= * =-=_ jn the light of these additional considerations, we conclude that Escobedo and Miranda should apply only to cases commenced after those decisions were announced. We *277 recognize that certain state courts have perceived the implications of Escobedo and have therefore anticipated our holding in Miranda. Of course States are still entirely free to effectuate under their own law stricter standards than those we have laid down and apply those standards in a broader range of cases than is required, by this decision.” (Italics mine.)
In view of the dicta in Johnson v. New Jersey (supra), the court has made findings as to the failure to warn the accused as required in the Johnson case as to future trial. However, even though the court believes presently there is no requirement to follow such a ruling in the case at bar, the court, not being a clairvoyant, has made this finding to meet any possible and future ruling that may be prescribed and adopted by the New York State Court of Appeals.
The contention that the failure to warn each defendant of his guaranteed constitutional and statutory rights invalidates their confession is rejected (Haynes v. Washington, 373 U. S. 503; People v. Gunner, 15 N Y 2d 226; People v. Acciarello, 23 A D 2d 777 [2d Dept. ]).
The test which must be applied to the case at bar, the Miranda case not being applicable, appears to be “ that the post-arrest, pre-arraignment, inculpatory admissions of the accused will be admissible against him at his trial if they were given under circumstances that a judge can satisfy himself that the accused was compelled to speak ’ (United States v. Williams, - F. 2d-[C. A., 2d | decided April 26, 1966).
The court reaches the conclusion that the People have established beyond a reasonable doubt:
(1) That the statement made by defendant Burwell to Detective Hidings was voluntarily made and of his own free will;
(2) That the answers made by the defendant Burwell to the Assistant District Attorney during the interrogation at the police station were voluntarily made and of his own free will;
(3) That the statement made by defendant McMooro to Detective Wright was voluntarily made and of his own free will;
(4) That the answers given to the Assistant District Attorney by the defendant McMoore during the interrogation were voluntarily given and of his own free will;
(5) That the answers of the defendant Washington given to the Assistant District Attorney during his interrogation were voluntarily g;iven and made of his own free will.
The remaining issue, the question of denial of access by counsel to the accused is now discussed. The defendant Burwell *278 offered one witness to support the claim that his attorney was denied the right to see or speak to him while he was in police custody. The witness was a young attorney in the employ of a firm of lawyers having an office on upper Fulton Street in the East New York area of the Borough of Brooklyn. He received a telephone call from Burwell’s mother to visit her son at the police station. Testifying at the trial, he stated that he arrived at the 75th Precinct between 12:00 and 1:00 p.m. Accepting the most favorable view of his testimony and evaluating it with his testimony when he was a witness at the Huntley hearing, he stated that he was sure that he did not request to see his client before 12:15 p.m. ; that he spoke to a uniformed officer who told him to wait and was unable to speak to the Assistant District Attorney until 3:00 p.m.; he stated he spoke to the defendant Burwell close to 4:00 p.m. ; he went directly to the Criminal Court where the defendants were arraigned late that afternoon and although present he did not file a notice of appearance and did not take any part in the arraignment proceedings. The attorney made no notation of what occurred during the events at the police station or at the arraignment proceedings. He attributed his silence at arraignment and his failure to file a notice of appearance (gratuitously stated by him) to the fact that he did not want to commit his employers to the defense of the defendant Burwell; he stated the clerk would not let him speak until he filed a retainer and that is why he hesitated and did not file the notice of appearance. The hearing record contains two complaints and an extract of the minutes of arraignment which were received in evidence by stipulation. These exhibits indicate that on the day in question, that is, December 27,1962, the attorney ivitness did file tivo notices of appearance in reference to each complaint, the complaint relating to an assault charge and also the complaint relating to the alleged homicide charge and the minutes of arraignment conceivably indicate that the attorney was present and took part in the arraignment.
The People offered testimony by the Assistant District Attorney who conducted the interrogations of the defendant as indicated in the trial record. He stated that he was informed by one of the officers that the attorney witness got there at about 2:00 p.m. and that he spoke to him about 3:00 p.m. He further stated that he had fully completed taking all statements before he had permitted the attorney for Burwell to see his client. He had also directed the detective to make a note of the attorney’s appearance and the time when he arrived and was permitted to speak to the accused.
*279 Detective Curtis, attached to the 75th Precinct, stated that he made a written record of the time of arrival of the attorney for the defendant Burwell; that the record was made on the same day of the event, that is, December 27, 1962, and he made these notations in his police memorandum book which was exhibited to the court and the attorneys during the trial. The time was 1:45 p.m. that the attorney arrived and stayed there for a while and returned at 2:30 p.m. and spoke to the Assistant District Attorney at 3:00 p.m. ; his notations further show that the attorney spoke to the defendant Burwell at 3:15 p.m. The defendants were taken by the police from the station house at 3:30 p.m. to the Bureau of Criminal Identification for photographing, then proceeded to the Criminal Court, Part IA, for the purpose of arraignment. The officer further testified that he told the Assistant District Attorney about the request of Burwell’s attorney and that he was told to advise the attorney that ho would not be permitted to see him until after he had completed his interrogation. It is clear that this denial to permit the attorney to see the defendant did not take place until after the completion of the interrogation that pertained to the homicide. As a matter of fact a statement that was referred to as People’s Exhibit 39 which dealt with the interrogation of defendant Burwell at least in part while the attorney for Burwell was in the police station was excluded and consequently forms no basis for any discussion of the issue presented in the case at bar.
Does the entire proof warrant a determination that the People have failed to establish that the interrogation of the defendant Burwell was conducted in violation of his constitutional rights and contrary to the principle enunciated by the opinion in People v. Donovan (13 N Y 2d 148, supra)? If the interrogation led to procuring the statements and confessions that were admitted in evidence or taken at any time during counsel’s request to see the accused, they would have to be excluded.
The confession, even if found to be voluntary beyond a reasonable doubt, would still be inadmissible if the defense had sustained by a fair preponderance of the evidence that counsel for the defendant Burwell was refused access to him. The Donovan case (supra) would be applicable and controlling to the case at bar. It would be of no concern that the opinion in the Donovan case (supra) was published after the confession herein and reported prior to the sentence. The defendant Burwell and his codefendants would have been deprived of their constitutional rights and due process of law and the contention would be a valid one. A confession procured by the police or prose *280 eutor in violation of guaranteed rights would have to be excluded (People v. Donovan, supra; People v. Failla, 14 N Y 2d 178; People v. Sanches, 15 N Y 2d 387; People v. Dorado, supra). A confession procured under such circumstances would be just as worthless as a confession made by an accused as a result of force, fear, assault or any other method condemned because that would be an invasion of the defendant’s constitutional rights and contrary to the accepted concept of fundamental fairness.
However, it is evident that the proof submitted by the only witness for the defense is not convincing. The proof adduced by the witnesses for the prosecution is creditable, reliable and has substantial factual support as borne out by the documentary records. Mistake, lack of memory and inexperience may be attributed to the young attorney witness who was called to support the defendant’s contention. Where, in a situation as here, there is no room for the slightest doubt the court is required to sustain the prosecution.
It is further concluded by the court on the question of whether the defendant Burwell’s attorney was denied access to him, that the defense has not sustained the claim of nonaccessibility of counsel to see and speak to his client. The People established beyond a reasonable doubt that there was no denial of the right of defendant Burwell’s counsel to see and confer with the accused. After reviewing the evidence submitted on the issue of denial of access, the following findings are made:
(1) That defendant Burwell’s attorney came to the 75th Precinct at about 1:45 p.m. on December 27, 1962.
(2) That the defendant Burwell’s attorney first demanded an opportunity to see and speak to his client at about 2:00 p.m. on said day.
(3) That the attorney representing the defendant Burwell first spoke to the Assistant District Attorney who was conducting an interrogation of all the defendants at 3:00 p.m. on said day.
(4) That defendant Burwell’s attorney first conferred with Burwell at 3 :15 p.m.
(5) Permission was given to defendant Burwell’s attorney to speak to his accused client at 3:00 p.m. on said day.
(6) That the interrogation of defendant Burwell as to any statements or confessions imputed to him and admitted in evidence was completed at 12:1.0 p.m. on said day.
The foregoing constitutes the court’s findings and conclusions and its determination in compliance with the directives of the appellate court.
*281 The District Attorney is directed to submit an order in conformance with the above decision and to return a copy thereof together with a transcript of the hearings held herein to the Appellate Division, Second Department, for further proceedings as may he required therein.